IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**DEWEY WOODLE**                                                                                    **PLAINTIFF**

VS.                              **CASE NO. 4:05CV00775 JMM**

**KOHLER CO.**                                                                                     **DEFENDANT**

**ORDER**

Pending before the Court is defendant's motion for judgment as a matter of law on the punitive damages award or in the alternative to apply a statutory cap of $300,000.00.  Plaintiff has responded and has also moved for injunctive relief of reinstatement.  For the reasons stated below, defendant's motion for judgment as a matter of law and plaintiff's motion for reinstatement will be granted.

*Punitive Damages*

This case was tried to a jury which returned a verdict in the total amount of $680,740.00 which included $80,740.00 in back pay, $200,000.00 in mental anguish and $400,000.00 in punitive damages.  At the conclusion of the plaintiff's case the Court dismissed the Arkansas Civil Rights claim, reserved final decision on the punitive damages claim and overruled defendant's motion for judgment as a matter of law on the remaining claims for compensatory damages.

Both plaintiff and defendant are in agreement that punitive damages are appropriate if an employer engaged in intentional discrimination with "malice or with reckless indifference to the

[plaintiff's] federally protected rights." 42 U.S.C. § 1981a(b)(1); *Kolstad v. American Dental Ass'n,* 527 U.S. 526, 119 S.Ct. 2118 (1999); *Foster v. Time Warner Entertainment Co.*, 250 F.3d 1189 (8th Cir. 2001)).   Moreover, in *Kolstad*, the Supreme Court held that an employer may not be held liable "for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good faith efforts to comply with Title VII." *Kolstad v. American Dental Ass'n,* 527 U.S. at 545.

At the center of the dispute as to plaintiff's disability and work restrictions was an interpretation of the medical reports and records submitted by Dr. John Wilson. Defendant interpreted Wilson's reports to limit plaintiff to sedentary work of which none was available at the time of plaintiff's layoff. Plaintiff maintained at the trial that defendant unreasonably interpreted Wilson's reports and that Wilson would allow both light duty as well as sedentary work. Defendant's human resources employee Ms. Kristen Strunk was relatively inexperienced in her job and was filling in at defendant's Searcy plant on a temporary basis. The other decision maker, Jerry Stone, had recently been assigned as the plant manager and was not intimately familiar with plaintiff or his restrictions. Dr. Wilson's opinions from his reports could reasonably have been interpreted in either plaintiff's or defendant's version and the Court finds that defendant's erroneous interpretation of what Dr. Wilson meant does not rise to the level of malice or reckless indifference that would support an award of punitive damages.

The Court is of the opinion that the facts closely resemble those of *Ollie v. Titan Tire Corp*, 336 F.3d 680 (8th Cir. 2003) in which the Court of Appeals for the Eighth Circuit held that a mistaken interpretation of a doctor's report was not considered malicious.

Plaintiff also points to proof that defendants showed reckless indifference for not consulting with Dr. Wilson, for not adequately training its employees on the Americans with Disabilities Act ("ADA") and not interacting with plaintiff sufficiently. The Court recalls the trial evidence, but does not believe that any or all of it was sufficient to sustain the jury's verdict on punitive damages.

The Court's grant of judgment as a matter of law render's moot the alternative argument that the claim be reduced to the statutory maximum of $300,000.00. However, the Court agrees with defendant that plaintiff's argument about pro-rating the award between the state and federal remedies is unavailing since the jury was not allowed to consider an award under the Arkansas Civil Rights Act.

*Reinstatement*

Plaintiff has filed a separate motion for injunctive relief in the form of (1) reinstatement or front pay; (2) removal of all adverse information from his personnel file; (3) reinstatement of his seniority rights with accompanying benefits and :(4) requiring defendant to accommodate plaintiff's disability by reassignment to a Quality Lead Person position within the Searcy plant.

The jury that heard this case found that defendant discriminated against plaintiff based on his perceived disability when it laid plaintiff off from his light duty assignment on April 16, 2004. The jury also found that defendant engaged in disparate treatment when it refused to reassign plaintiff to the Quality Lead Person position. After trial defendant offered and plaintiff accepted reinstatement with full seniority and benefits.

The Court has authority under § § 12117(a) and 2000e-5(g)(1) of the ADA to reinstate plaintiff to an appropriate position as follows:

3

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay. . . or any other equitable relief as the court deems appropriate.

42 U.S.C. § 2000e-5(g)(1).

The Court finds that reinstatement of plaintiff immediately to a light duty assignment is appropriate and that plaintiff be given an equal opportunity with other employees to compete for the next available Quality Lead Person position.  The Court also orders that defendant remove all adverse information, if any, from plaintiff's employment file based upon either his disability or perceived disability.

IT IS SO ORDERED THIS  5   day of  December , 2006.

_____
James M. Moody
United States District Court